UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DEBORAH CRONIN, ERIN REEVE,
CATHLEEN RODRIGUEZ and KELLIE ZAPPONE,

                                 Plaintiffs,

-against-

CITY SCHOOL DISTRICT OF ALBANY and
GREGORY JONES,

                                 Defendants.

_____

**COMPLAINT AND
DEMAND FOR
JURY TRIAL**

Civil Action No.  1:14-CV-98
                   (LEK/ATB)

Plaintiffs Deborah Cronin, Erin Reeve, Cathleen Rodriguez and Kellie Zappone, by and through their attorneys, Iseman, Cunningham, Riester & Hyde, LLP, as and for their Complaint against defendants, respectfully allege as follows:

### JURISDICTION

1.      This action arises from the discriminatory employment practices of defendants which violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and/or the New York Executive Law § 290 *et seq.*

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that plaintiffs' claims arise under 42 U.S.C. § 2000e *et seq.*

3.      This Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367, because plaintiffs' claims under the New York Executive Law arise from the same set of facts and circumstances and form part of the same case or controversy which give rise to their Title VII claims.

## PARTIES

4.     Plaintiff Deborah Cronin is a female citizen of the United States of America who resides within the County of Albany, State of New York.

5.     Plaintiff Erin Reeve is a female citizen of the United States of America who resides within the County of Albany, State of New York.

6.     Plaintiff Cathleen Rodriguez is a female citizen of the United States of America who resides within the County of Albany, State of New York.

7.     Kellie Zappone is a female citizen of the United States of America who resides within the County of Albany, State of New York.

8.     Upon information and belief, defendant City School District of Albany ("the District") is a school district duly organized and existing under the laws of the State of New York, with its principal offices located at 1 Academy Park, Elk Street, Albany, New York.

9.     Upon information and belief, the District is an "employer" within the meaning of 42 U.S.C. § 2000e(b), in that it engages in an industry affecting commerce and employs more than the requisite number of persons for the requisite duration of time under Title VII.

10.     Upon information and belief, the District employs more than five hundred employees, as that term is defined in Title VII.

11.     Upon information and belief, the District is an "employer" within the meaning of Executive Law § 292(5), in that it employs more than four persons.

12.     Ms. Cronin has been employed by the District at its New Scotland Elementary School (also previously known as School 19) from September 2005 to the present.

13.     Ms. Reeve has been employed by the District at its New Scotland Elementary School from September 1994 to the present.

14.     Ms. Rodriguez has been employed by the District at its New Scotland Elementary School from November 27, 1991, to the present.

15.     Ms. Zappone has been employed by the District at its New Scotland Elementary School from September 1, 1987, to the present.

16.     Upon information and belief, defendant Gregory Jones is a male citizen of the United States of America who resides within the County of Albany, State of New York.

17.     Upon information and belief, in or about September 2005, the District hired defendant Jones to be the Principal at the District's New Scotland Elementary School.

18.     Upon information and belief, before his hiring as the Principal of the District's New Scotland Elementary School, defendant Jones had been employed by the District as a teacher and as an assistant principal.

19.     Upon information and belief, as the Principal of New Scotland Elementary School, defendant Jones was the highest-ranking person employed by the District at New Scotland Elementary School.

20.     Upon information and belief, as the Principal of New Scotland Elementary School, defendant Jones had the ability to make recommendations as to the hiring, firing, and transfer of teachers employed at the District's New Scotland Elementary School.

21.     Upon information and belief, as the Principal of New Scotland Elementary School, defendant Jones had the ability to direct each of the plaintiffs' respective work schedules.

22.     By reason of the foregoing, as the Principal of New Scotland Elementary School, defendant Jones was the plaintiffs' supervisor.

## PROCEDURAL HISTORY

**Deborah Cronin:**

23.     On or about February 11, 2013, Ms. Cronin timely filed with the New York State Division of Human Rights ("DHR") a charge of gender discrimination against defendants.

24.     Pursuant to Title VII and contracts entered into between DHR and the Equal Employment Opportunity Commission ("EEOC"), the charge was dual-filed with EEOC.

25.     On or about March 13, 2013, in accordance with the requirements of New York Education Law § 3813 and General Municipal Law § 50-e, a Verified Notice of Claim, advising the District that the rights afforded Ms. Cronin under the New York Executive Law had been violated during the course of her employment at the District's New Scotland Elementary School, was served upon the District on Ms. Cronin's behalf.

26.     On or about May 8, 2013, the attorneys for the District conducted an examination of Ms. Cronin, as permitted under New York General Municipal Law § 50-h.

27.     Upon information and belief, the District has refused and/or neglected to adjust and pay the claims asserted by Ms. Cronin in her Verified Notice of Claim.

28.     On or about August 9, 2013, after investigating Ms. Cronin's claims against defendants, DHR issued a Determination After Investigation through which DHR determined that there was "probable cause" to believe that defendants had engaged in discriminatory practices with respect to Ms. Cronin.  A copy of DHR's Determination After Investigation is attached hereto as Exhibit A.

29.     On or about November 21, 2013, Ms. Cronin requested that DHR dismiss her state law claims of discrimination for administrative convenience, pursuant to New York Executive Law § 297(9).

30.     On or about December 16, 2013, DHR dismissed for administrative convenience the state law claims of discrimination filed by Ms. Cronin.

31.     On or about January 15, 2014, Ms. Cronin received from EEOC a "Notice of Right to Sue," entitling her to commence this action within 90 days of her receipt of the notice. A copy of the "Notice of Right to Sue" received by Ms. Cronin is attached hereto as Exhibit B.

**Erin Reeve:**

32.     On or about March 13, 2013, in accordance with the requirements of New York Education Law § 3813 and General Municipal Law § 50-e, a Verified Notice of Claim, advising the District that the rights afforded Ms. Reeve under the New York Executive Law had been violated during the course of her employment at the District's New Scotland Elementary School, was served upon the District on Ms. Reeve's behalf.

33.     On or about May 13, 2013, the attorneys for the District conducted an examination of Ms. Reeve, as permitted under New York General Municipal Law § 50-h.

34.     Upon information and belief, the District has refused and/or neglected to adjust and pay the claims asserted by Ms. Reeve in her Verified Notice of Claim.

35.     On or about May 21, 2013, Ms. Reeve timely filed with DHR a charge of gender discrimination against defendants.

36.     Pursuant to Title VII and contracts entered into between DHR and EEOC, the charge was dual-filed with the EEOC.

37.     On or about November 14, 2013, after investigating Ms. Reeve's claims against defendants, DHR issued a Determination After Investigation through which DHR determined that there was "probable cause" to believe that defendants had engaged in discriminatory

practices with respect to Ms. Reeve.  A copy of DHR's Determination After Investigation is attached hereto as Exhibit C.

38.     On or about December 3, 2013, Ms. Reeve requested that DHR dismiss her state law claims of discrimination for administrative convenience, pursuant to New York Executive Law § 297(9).

39.     On or about December 23, 2013, DHR dismissed for administrative convenience the state law claims of discrimination filed by Ms. Reeve.

40.     On or about January 15, 2014, Ms. Reeve received from EEOC a "Notice of Right to Sue," entitling her to commence this action within 90 days of her receipt of the notice.  A copy of the "Notice of Right to Sue" received by Ms. Reeve is attached hereto as Exhibit D.

**Cathleen Rodriguez:**

41.     .  On or about March 13, 2013, in accordance with the requirements of New York Education Law § 3813 and General Municipal Law § 50-e, a Verified Notice of Claim, advising the District that the rights afforded Ms. Rodriguez under the New York Executive Law had been violated during the course of her employment at the District's New Scotland Elementary School, was served upon the District on Ms. Rodriguez's behalf.

42.     On or about May 7, 2013, the attorneys for the District conducted an examination of Ms. Rodriguez, as permitted under New York General Municipal Law § 50-h.

43.     Upon information and belief, the District has refused and/or neglected to adjust and pay the claims asserted by Ms. Rodriguez in her Verified Notice of Claim.

44.     On or about May 21, 2013, Ms. Rodriguez timely filed with DHR a charge of gender discrimination against defendants.

45.     Pursuant to Title VII and contracts entered into between DHR and EEOC, the charge was dual-filed with EEOC.

46.     On or about November 14, 2013, after investigating Ms. Rodriguez's claims against defendants, DHR issued a Determination After Investigation through which DHR determined that there was "probable cause" to believe that defendants had engaged in discriminatory practices with respect to Ms. Rodriguez.  A copy of DHR's Determination After Investigation is attached hereto as Exhibit E.

47.     On or about December 3, 2013, Ms. Rodriguez requested that DHR dismiss her state law claims of discrimination for administrative convenience, pursuant to New York Executive Law § 297(9).

48.     On or about December 23, 2013, DHR dismissed for administrative convenience the state law claims of discrimination filed by Ms. Rodriguez.

49.     On or about January 15, 2014, Ms. Rodriguez received from EEOC a "Notice of Right to Sue," entitling her to commence this action within 90 days of her receipt of the notice. A copy of the "Notice of Right to Sue" received by Ms. Rodriguez is attached hereto as Exhibit F.


**Kellie Zappone:**

50.     On or about March 13, 2013, in accordance with the requirements of New York Education Law § 3813 and General Municipal Law § 50-e, a Verified Notice of Claim, advising the District that the rights afforded Ms. Zappone under the New York Executive Law had been violated during the course of her employment at the District's New Scotland Elementary School, was served upon the District on Ms. Zappone's behalf.

51.     On or about May 13, 2013, the attorneys for the District conducted an examination of Ms. Zappone, as permitted under New York General Municipal Law § 50-h.

52.     Upon information and belief, the District has refused and/or neglected to adjust and pay the claims asserted by Ms. Zappone in her Verified Notice of Claim.

53.     On or about May 21, 2013, Ms. Zappone timely filed with DHR charges of discrimination against defendants.

54.     Through her DHR complaint, Ms. Zappone alleged that she was the victim of discriminatory employment practices because of (a) her gender, and (b) retaliation for her opposition to defendants' discriminatory practices.

55.     Pursuant to Title VII and contracts entered into between DHR and EEOC, the charges were dual-filed with EEOC.

56.     On or about November 14, 2013, after investigating Ms. Zappone's claims against defendants, DHR issued a Determination After Investigation through which DHR had determined that there was "probable cause" to believe that defendants had engaged in discriminatory practices with respect to Ms. Zappone.  A copy of DHR's Determination After Investigation is attached hereto as Exhibit G.

57.     On or about December 3, 2013, Ms. Zappone requested that DHR dismiss her state law claims of discrimination for administrative convenience, pursuant to New York Executive Law § 297(9).

58.     On or about December 23, 2013, DHR dismissed for administrative convenience the state law claims of discrimination filed by Ms. Zappone.

59.     On or about January 15, 2014, Ms. Zappone received from EEOC a "Notice of

Right to Sue," entitling her to commence this action within 90 days of her receipt of the notice.

A copy of the "Notice of Right to Sue" received by Ms. Zappone is attached hereto as Exhibit H.


## FACTS

**Deborah Cronin:**

60.     Upon information and belief, beginning in 2006, Principal Jones engaged in

inappropriate conduct towards Ms. Cronin on the basis of her gender.

61.     Among the specific instances of inappropriate conduct that Principal Jones

directed at Ms. Cronin were the following:

- In 2006, Principal Jones came up from behind Ms. Cronin, while she was hanging artwork in New Scotland Elementary School, and then proceeded to pick her up, wrap his arms around her and place his hands on Ms. Cronin's breasts.

- In June 2008, Principal Jones came into Ms. Cronin's room, asked her if she was pregnant, and then stated to her, in words or in substance, "Because if I got you pregnant, you would know it."

- In 2009, Principal Jones approached Ms. Cronin in the art closet at New Scotland Elementary School and stated, "OK, now I can get you in the closet."

- On January 8, 2010, Principal Jones attempted to kiss Ms. Cronin while she was in his car after an "after work" party.

- In September 2011, during a School Open House Night, Principal Jones came into Ms. Cronin's classroom and commented on her dress and how her legs looked in boots.  That evening, he also demanded a hug and, according to Ms. Cronin, he groped at her.

- On or about May 30, 2012, in the school's main center hallway, Principal Jones asked Ms. Cronin to go out with him, "I gotta get you out and have fun with you."

- On January 5, 2013, while Ms. Cronin was in line at the First New York Bank on Central Avenue in Albany, Principal Jones came up from behind her, squeezed and then pinched her right side. Even though Ms. Cronin's son was with her at the time, Principal Jones whispered in Ms. Cronin's ear, "How are you doing?"

- On January 16, 2013, Principal Jones approached Ms. Cronin, came in close proximity to her face and whispered, "Hello, beautiful."

62.     In addition to these specific instances of inappropriate conduct by Principal Jones, he also directed unwelcome, offensive comments to Ms. Cronin and engaged in unwanted touchings on a repeated basis. This repeated conduct, which was constant beginning in 2006 and continued through the 2012-13 school year, included but is not limited to the following examples:

- At various times throughout his time in a supervisory capacity at New Scotland Elementary School, Principal Jones inappropriately commented about Ms. Cronin's personal appearance and how she looked. Among the comments he made to her were: "You should smile more; I like your smile"; "You look good, I like what I see"; "You got what I need"; and "It's hot in here 'cuz of you." On several occasions while she was preparing her lunch, Principal Jones would comment about Ms. Cronin's figure and advise her that she "didn't need to eat that."

- From Fall 2011 to late Spring 2012, Principal Jones would often wait at Ms. Cronin's door as the last class left at end of the school day and then move into her classroom after the children left. Ms. Cronin would continue to work nervously. Principal Jones would question her as to why she was behaving this way and why she would not sit down with him. She explained to her supervisor that she was just doing her job. These conversations often ended awkwardly, with Principal Jones asking of Ms. Cronin, "Why are you always running away from me?" or "Why are you so nervous?"

63.     Ms. Cronin advised Principal Jones that his sexual innuendo, comments and touchings were unwelcome and should be stopped.

64.     Despite Ms. Cronin advising him that his sexual innuendo, comments and touchings were unwelcome, Principal Jones persisted in his continuous harassment of Ms. Cronin.

65.     The continuous harassment of Ms. Cronin by Principal Jones, which began as early as 2006, continued to occur until on or about February 15, 2013, when Principal Jones was placed on administrative leave by the District.

**Erin Reeve:**

66.     Prior to the hiring of defendant Jones as Principal, Ms. Reeve had not encountered discrimination while employed by the District at its New Scotland Elementary School.

67.     Upon information and belief, after defendant Jones assumed the position of Principal of New Scotland Elementary School, he engaged in inappropriate conduct towards Ms. Reeve.

68.     Among the specific instances of inappropriate conduct that Principal Jones directed at Ms. Reeve were the following:

- During the 2007 school year, while Ms. Reeve was ascending the stairs on the third floor of New Scotland Elementary School, Principal Jones approached her from behind, grabbed her rear end, and made a grunting sound while he grabbed her.

- In June 2007, at an end-of-year retirement party at Colonie Country Club, Principal Jones spent a majority of the evening leering at Ms. Reeve and another teacher while they were dancing.  Principal Jones repeatedly asked Ms. Reeve, in words or in substance, "Where was the after party" and where they were going.  Principal Jones made Ms. Reeve and her colleague feel so uncomfortable that they asked a male teacher to serve as a "lookout" in order that they could "escape" from the party without Principal Jones noticing.

- During the summer of 2007, Ms. Reeve represented the District at a National Urban Alliance conference being conducted at the Desmond conference center in Albany.  During a break in one of the conference's sessions, Principal Jones approached Ms. Reeve and stated to her, "We should get a room."  Ms. Reeve refused this unwelcome advance from Principal Jones.

- During 2008, while New Scotland Elementary School sessions were being conducted at the Montessori School (due to renovations at New Scotland Elementary School), Principal Jones approached Ms. Reeve from behind and stated, in words or in substance, "I'm going to pull you into that closet."

- At a Christmas party in December 2011, Principal Jones constantly looked at Ms. Reeve and stated to her, in words or in substance, "Don't leave without letting me know." Similar to the event at Colonie Country Club, Ms. Reeve waited for an opportunity to leave the restaurant at which the event was being held without Principal Jones noticing. When Principal Jones did observe that Ms. Reeve had left the restaurant, he ran out of the building, followed Ms. Reeve towards her car and yelled to her to stop and wait for him.

- During the spring of 2012, Principal Jones was walking around the New Scotland Elementary School building with another male (whom Ms. Reeve believed was not an employee of the District). Principal Jones introduced him to Ms. Reeve. When the other male commented to Principal Jones that "He needed to get with that," Principal Jones responded, in words on in substance, that "[He was] working on it."

- In November 2012, after school on a Friday, Ms. Reeve was socializing at Martel's restaurant in Albany with some co-workers. Principal Jones later came into the restaurant's bar area. Ms. Reeve did not acknowledge her supervisor. The following Monday at work, Principal Jones called Ms. Reeve into his office and angrily stated to her, in words or in substance, "Why did you blow me off on Friday? You think you are too good for me?"

- On several occasions, Principal Jones advised Ms. Reeve that the special education department wanted to transfer her to another school, but he implied that he would never let someone as attractive as her be transferred. By stating that it was only because of him that she was able to remain at New Scotland Elementary School, Principal Jones left the impression that he believed Ms. Reeve "owed" him.

69. In addition to these specific instances of inappropriate conduct by Principal Jones, he also directed unwelcome, offensive comments to Ms. Reeve and engaged in unwanted touchings on a repeated basis. This repeated conduct, which was constant beginning in 2007 and continued through the 2012-13 school year, included but is not limited to the following examples:

- Principal Jones would state to Ms. Reeve, in words or in substance, "Give me some love" or "Give me a hug," after which he would advance towards Ms. Reeve and hug her with his hand on her lower back or side.

- Principal Jones would state to Ms. Reeve, in words or in substance, "I love it when I make you blush. You like it."

- Principal Jones repeatedly made comments to Ms. Reeve about her weight, appearance or clothing. On some occasions, he stated that she had lost too much weight and that she needed to gain weight. On other occasions, Principal Jones would comment to Ms. Reeve, in words or in substance, "You've gained weight" or "You're plump." He would continue that "I like it, because now I have something to grab on to." Ms. Reeve repeatedly told Principal Jones that such comments were unwelcome.

- Almost daily, at times from the door of Ms. Reeve's classroom or in a hallway at the school, Principal Jones would stare and/or leer at Ms. Reeve while she was attending to her students.

70.    Ms. Reeve advised Principal Jones that his sexual innuendo, comments and touchings were unwelcome and should be stopped.

71.    Despite Ms. Reeve advising him that his sexual innuendo, comments and touchings were unwelcome, Principal Jones persisted in his continuous harassment of Ms. Reeve.

72.    The continuous harassment of Ms. Reeve by Principal Jones, which began as early as 2007, continued to occur until on or about February 15, 2013, when Principal Jones was placed on administrative leave by the District.


**Cathleen Rodriguez:**

73.    Prior to the hiring of defendant Jones as Principal, Ms. Rodriguez had not encountered discrimination while employed by the District at its New Scotland Elementary School.

74.    Upon information and belief, after defendant Jones assumed the position of Principal of New Scotland Elementary School, he engaged in inappropriate conduct towards Ms. Rodriguez.

75.     Among the specific instances of inappropriate conduct that Principal Jones directed at Ms. Rodriguez were the following:

- In approximately 2006, Ms. Rodriguez was discussing a student's behavior with Principal Jones. Without warning, Principal Jones grabbed Ms. Rodriguez by her belt buckle and directed her to "get over here."

- In close temporal proximity to the foregoing incident, Ms. Rodriguez was in a private office with Principal Jones. Principal Jones stated to Ms. Rodriguez, in words or in substance, that a married individual was the "perfect person" with whom to have an affair. When Ms. Rodriguez stated that she was happily married, Principal Jones then stated that they would be perfect together because one should have an affair with someone who does not want his or her marriage to break up.

- While she was teaching first grade, Ms. Rodriguez had a child on her lap during a school performance. Principal Jones approached her and whispered in her ear, "[The child] has a very good seat. Is there something that I could do to get that seat?"

- In February 2010, on the day before Valentine's Day, Principal Jones asked Ms. Rodriguez, in words or in substance, "Are you going to be my valentine?" When Ms. Rodriguez nervously made mention of her husband, Principal Jones replied, "How about you be my work valentine?"

- In April 2010, as Ms. Rodriguez was making Easter cards with her first grade class (that said "Some Bunny Loves You"), Principal Jones had been watching Ms. Rodriguez from the classroom's doorway. He then entered the classroom and whispered in her ear, "Where is my bunny card?"

- In August 2011, Ms. Rodriguez came to New Scotland Elementary School with her then-ten-year-old daughter to set up her classroom for the upcoming school year. Principal Jones came into the room, hugged Ms. Rodriguez in front of her daughter, and whispered into her ear, "You had a good summer. You look good."

- In December 2012, just before the Christmas holiday break, Ms. Rodriguez found herself alone with Principal Jones in a copy room. Principal Jones told her, "Do me a favor and eat over the break. I don't want you to get too thin on me." Then, he grabbed her side.

76.     In addition to these specific instances of inappropriate conduct by Principal Jones, he also directed unwelcome, offensive comments to Ms. Rodriguez and engaged in unwanted

touchings on a repeated basis.  This repeated conduct, which was constant beginning in 2006 and continued through the 2012-13 school year, included but is not limited to the following:

- Principal Jones would repeatedly ask Ms. Rodriguez for hugs, saying, in words or in substance, "Give me some love."

- Principal Jones was repeatedly grabbing and squeezing Ms. Rodriguez's waist, saying, in words or in substance, "Hey, you are looking good."

- Principal Jones would enter Ms. Rodriguez's classroom while she was seated at her desk.  He would hover over her and instruct her to "get out from behind that desk."  Ms. Rodriguez found this conduct to be very intimidating.

- Principal Jones repeatedly made comments to Ms. Rodriguez about her weight, appearance or clothing.  Examples of these sorts of comments were: "You have no business looking that good in that [outfit]," and "Going to the gym is working for you."

- Almost daily, at times from the door of Ms. Rodriguez's classroom or in a hallway at the school, Principal Jones would stare and/or leer at Ms. Rodriguez while she was attending to her students.

77.     Ms. Rodriguez advised Principal Jones that his sexual innuendo, comments and touchings were unwelcome and should be stopped.

78.     Despite Ms. Rodriguez advising him that his sexual innuendo, comments and touchings were unwelcome, Principal Jones persisted in his continuous harassment of Ms. Rodriguez.

79.     The continuous harassment of Ms. Rodriguez by Principal Jones, which began as early as 2006, continued to occur until on or about February 15, 2013, when Principal Jones was placed on administrative leave by the District.

**Kellie Zappone:**

80.     Prior to the hiring of defendant Jones as Principal, Ms. Zappone had not encountered discrimination while employed by the District at its New Scotland Elementary School.

81.     Upon information and belief, after defendant Jones assumed the position of Principal of New Scotland Elementary School, he engaged in inappropriate conduct towards Ms. Zappone.

82.     Among the specific instances of inappropriate conduct that Principal Jones directed at Ms. Zappone were the following:

- In April 2008, while at the home of a co-worker whose mother had recently passed, Principal Jones approached Ms. Zappone and sat down next to her on a small sofa. He sat so close to her that his leg was rubbing up against Ms. Zappone and he whispered in her ear, in words or in substance, "Wow. You look really hot. We should go out for drinks." Later that same evening, while Principal Jones and Ms. Zappone were in the kitchen of the co-worker's home, he stated to her, "Let's go check out the bedrooms in the back . . . ." Ms. Zappone was very uncomfortable with her supervisor's behavior and tried to leave, but Principal Jones put his hand on the door so she could not open the door as she attempted to leave. Only after the then-PTA president told him to "take your hand down if the girl wants to leave" did Principal Jones let Ms. Zappone leave the house. After Ms. Zappone left the house, Principal Jones still followed her to her car and asked Ms. Zappone if he could get in her car. Shaken and crying, Ms. Zappone drove away without him. Shortly after this incident, Principal Jones approached Ms. Zappone as she entered her car to leave school and asked her why she had "abandoned" him at the co-worker's house and when she could "make it up" to him.

- During the spring of 2008, Ms. Zappone attended an awards dinner at the Marriott hotel on Wolf Road in Albany. Following the dinner, Ms. Zappone and a few co-workers stopped at the hotel bar for drinks. Soon thereafter, Principal Jones stopped by the bar, and in a very persistent manner, stood very close to Ms. Zappone and commented on her appearance. Uncomfortable with this behavior, Ms. Zappone asked a colleague to serve as a "lookout" in order that she could "escape" from the event without Principal Jones noticing.

- In March 2010, Ms. Zappone was making copies in the work room on the New Scotland Elementary School's main floor. After Ms. Zappone advised him that she needed some paper for the copy machine, Principal Jones

followed her into an adjacent storage room.  Principal Jones proceeded to approach Ms. Zappone from behind, put his hands on her waist, and commented, in words or in substance, "Hey, baby, you look hot!"

- Also in March 2010, Ms. Zappone was assisting with the school musical.  Ms. Zappone was seated in a corner of the auditorium so she could direct students on and off stage as needed.  During a Friday evening performance, Principal Jones pulled a chair over next to Ms. Zappone, stating that it was their "own private area."  Principal Jones sat so close to Ms. Zappone that his leg was rubbing up against her; he also commented about her appearance and asked her to go out for drinks after the performance.  When Ms. Zappone ignored his behavior, Principal Jones angrily stormed way.

- In August 2010, when Ms. Zappone was teaching summer school at New Scotland Elementary School, she brought a change of clothes, as she was planning to attend Saratoga Race Course after school was let out, and placed the outfit on a hanger behind her desk.  Principal Jones repeatedly entered her classroom that day and commented that he wanted Ms. Zappone to put the outfit on, so Principal Jones could see how "hot" Ms. Zappone would look in it.

- On August 29, 2012, Ms. Zappone entered the Albany High School gymnasium for a Superintendent's conference day for District personnel.  As Ms. Zappone was looking for a seat, a nearby Principal Jones leaned over to her and stated to her, "I don't know if it is hot in here or whether your outfit is making me hot."  Ms. Zappone walked away, found a seat in the bleachers near a co-worker, and started crying.

- In November 2012, Ms. Zappone had become upset because of the intersection of some personal and personnel issues.  Principal Jones noticed that she was upset and led Ms. Zappone into the faculty room and escorted her to a couch in the room.  Principal Jones then proceeded to hug her, with both arms around her.  Uncomfortable with this behavior, Ms. Zappone pushed him away.

- On December 21, 2012, Principal Jones told Ms. Zappone, in words or in substance, "You should eat a lot over Christmas vacation because you need to get your voluptuous figure back."

83.    In addition to these specific instances of inappropriate conduct by Principal Jones,

he also directed unwelcome, offensive comments to Ms. Zappone and engaged in unwanted

touchings on a repeated basis.  This repeated conduct, which was constant beginning in 2008 and

continued through the 2012-13 school year, included but is not limited to the following examples:

- Principal Jones would repeatedly approach Ms. Zappone and state that she should "give [him] a hug," after which Principal Jones would reach out and hug her.

- Principal Jones repeatedly made comments to Ms. Zappone about her weight, appearance or clothing.  Examples included comments about how "hot" she looked and that she needed to work on her figure.

- Almost daily, at times from the door near the front of Ms. Zappone's classroom or in a hallway at the school, Principal Jones would stare and/or leer at Ms. Zappone while she was attending to her students.

84.    Ms. Zappone advised Principal Jones that his sexual innuendo, comments and touchings were unwelcome and should be stopped.

85.    Despite Ms. Zappone advising him that his sexual innuendo, comments and touchings were unwelcome, Principal Jones persisted in his continuous harassment of Ms. Zappone.

86.    The continuous harassment of Ms. Zappone by Principal Jones, which began as early as 2008, continued to occur until on or about February 15, 2013, when Principal Jones was placed on administrative leave by the District.

**The Plaintiffs:**

87.    By virtue of the unsolicited and unwelcome conduct to which they were subjected by Principal Jones, plaintiffs were forced to endure at the District's New Scotland Elementary School discriminatory conduct that was so pervasive that it altered the conditions of their employment and created a working environment that was intimidating, hostile and offensive to plaintiffs and to other similarly situated female employees.

88.     Upon information and belief, as Principal of New Scotland Elementary School, defendant Jones used his actual or apparent authority over plaintiffs to further his harassment of each of them.

89.     Upon information and belief, as Principal of New Scotland Elementary School, defendant Jones was aided in accomplishing the harassment of plaintiffs by the existence of his position as plaintiffs' supervisor.

90.     Upon information and belief, the District's supervisory personnel permitted a pattern of conduct by Principal Jones that intimidated, harassed and offended plaintiffs to persist at its New Scotland Elementary School, even though they knew, or should have known, that such conduct was occurring.

91.     Upon information and belief, the District's supervisory personnel took no effective measures to eliminate the discriminatory conduct to which plaintiffs were being subjected by Principal Jones and the hostile working environment that said discriminatory practices were creating, even though they knew, or should have known, that such conduct was occurring.

92.     By failing to take corrective action even though its supervisory personnel knew or should have known that discriminatory practices by Principal Jones were occurring at New Scotland Elementary School, the District encouraged, condoned and approved of the unlawful and discriminatory conduct described herein.

93.     By failing to take corrective action even though it knew or should have known that discriminatory practices were occurring at New Scotland Elementary School, the District failed to exercise reasonable care to prevent and promptly correct any discriminatory conduct directed by Principal Jones towards plaintiffs and other similarly situated female employees.

94.     Upon information and belief, an employer may place an individual employee on administrative leave in order that it may conduct an investigation into charges that the individual has engaged in wrongful behavior.

95.     Upon information and belief, the District placed defendant Jones on paid administrative leave on or about February 15, 2013.

96.     Upon information and belief, the District thereafter conducted an investigation into the behavior of defendant Jones while he served as the Principal of the District's New Scotland Elementary School.

97.     Upon information and belief, the District has concluded its investigation into the behavior of defendant Jones while he served as the Principal of the District's New Scotland Elementary School.

98.     Upon information and belief, even though the District has concluded its investigation into the behavior of defendant Jones while he served as the Principal of the District's New Scotland Elementary School, the District has taken no action to discipline him for the unlawful discriminatory conduct that he directed towards plaintiffs and other similarly situated female employees.

99.     By failing to take action to discipline defendant Jones for the unlawful discriminatory conduct that he directed towards plaintiffs and other similarly situated female employees, the District has further encouraged, condoned, ratified and/or approved of the unlawful discriminatory conduct in which he engaged.

100.    By reason of the foregoing acts and omissions, the District has engaged in discrimination with malice or reckless indifference to the rights of plaintiffs, including, but not limited to, those rights afforded them under Title VII and the New York Executive Law.

101.    By reason of the foregoing acts and omissions, plaintiffs have suffered emotional pain, suffering, mental anguish, inconvenience, and loss of enjoyment of life.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Gender Discrimination of Deborah Cronin By the District)

102.    Plaintiff Deborah Cronin repeats and reiterates each and every allegation in paragraphs 1 through 101 of the Complaint with the same force and effect as if they were fully set forth herein.

103.    The District discriminated against Ms. Cronin because of her gender, in violation of the rights afforded Ms. Cronin under Title VII and the New York Executive Law, by engaging in, tolerating, ratifying or failing to prevent the gender discrimination of Ms. Cronin and by failing to take affirmative steps to correct and redress these unlawful employment practices when the District knew or should have known that such conduct was occurring.

104.    In addition, because Principal Jones used his actual or apparent authority over Ms. Cronin to further his harassment of her, and he was otherwise aided in accomplishing the harassment of Ms. Cronin by the existence of his position as her supervisor, the District is strictly liable for the discriminatory conduct that Principal Jones directed at Ms. Cronin.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Gender Discrimination of Deborah Cronin By Jones)

105.    Plaintiff Deborah Cronin repeats and reiterates each and every allegation in paragraphs 1 through 104 of the Complaint with the same force and effect as if they were fully set forth herein.

106.    Because defendant Jones actually participated in the conduct that gives rise to Ms. Cronin's claim of gender discrimination, he has acted in violation of the rights afforded Ms.

Cronin under the New York Executive Law and is liable to her for his conduct, as set forth herein.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Gender Discrimination of Erin Reeve By the District)

107.   Plaintiff Erin Reeve repeats and reiterates each and every allegation in paragraphs 1 through 106 of the Complaint with the same force and effect as if they were fully set forth herein.

108.   The District discriminated against Ms. Reeve because of her gender, in violation of the rights afforded Ms. Reeve under Title VII and the New York Executive Law, by engaging in, tolerating, ratifying or failing to prevent the gender discrimination of Ms. Reeve and by failing to take affirmative steps to correct and redress these unlawful employment practices when the District knew or should have known that such conduct was occurring.

109.   In addition, because Principal Jones used his actual or apparent authority over Ms. Reeve to further his harassment of her, and he was otherwise aided in accomplishing the harassment of Ms. Reeve by the existence of his position as her supervisor, the District is strictly liable for the discriminatory conduct that Principal Jones directed at Ms. Reeve.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Gender Discrimination of Erin Reeve By Jones)

110.   Plaintiff Erin Reeve repeats and reiterates each and every allegation in paragraphs 1 through 109 of the Complaint with the same force and effect as if they were fully set forth herein.

111.   Because defendant Jones actually participated in the conduct that gives rise to Ms. Reeve's claim of gender discrimination, he has acted in violation of the rights afforded Ms. Reeve under the New York Executive Law and is liable to her for his conduct, as set forth herein.

{00837606}                                            22

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Gender Discrimination of Cathleen Rodriguez By the District)

112.    Plaintiff Cathleen Rodriguez repeats and reiterates each and every allegation in paragraphs 1 through 111 of the Complaint with the same force and effect as if they were fully set forth herein.

113.    The District discriminated against Ms. Rodriguez because of her gender, in violation of the rights afforded Ms. Rodriguez under Title VII and the New York Executive Law, by engaging in, tolerating, ratifying or failing to prevent the gender discrimination of Ms. Rodriguez and by failing to take affirmative steps to correct and redress these unlawful employment practices when the District knew or should have known that such conduct was occurring.

114.    In addition, because Principal Jones used his actual or apparent authority over Ms. Rodriguez to further his harassment of her, and he was otherwise aided in accomplishing the harassment of Ms. Rodriguez by the existence of his position as her supervisor, the District is strictly liable for the discriminatory conduct that Principal Jones directed at Ms. Rodriguez.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Gender Discrimination of Cathleen Rodriguez By Jones)

115.    Plaintiff Cathleen Rodriguez repeats and reiterates each and every allegation in paragraphs 1 through 114 of the Complaint with the same force and effect as if they were fully set forth herein.

116.    Because defendant Jones actually participated in the conduct which gives rise to Ms. Rodriguez's claim of gender discrimination, he has acted in violation of the rights afforded Ms. Rodriguez under the New York Executive Law and is liable to her for his conduct, as set forth herein.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Gender Discrimination of Kellie Zappone By the District)

117.    Plaintiff Kellie Zappone repeats and reiterates each and every allegation in paragraphs 1 through 116 of the Complaint with the same force and effect as if they were fully set forth herein.

118.    The District discriminated against Ms. Zappone because of her gender, in violation of the rights afforded Ms. Zappone under Title VII and the New York Executive Law, by engaging in, tolerating, ratifying or failing to prevent the gender discrimination of Ms. Zappone and by failing to take affirmative steps to correct and redress these unlawful employment practices when the District knew or should have known that such conduct was occurring.

119.    In addition, because Principal Jones used his actual or apparent authority over Ms. Zappone to further his harassment of her, and he was otherwise aided in accomplishing the harassment of Ms. Zappone by the existence of his position as her supervisor, the District is strictly liable for the discriminatory conduct that Principal Jones directed at Ms. Zappone.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Gender Discrimination of Kellie Zappone By Jones)

120.    Plaintiff Kellie Zappone repeats and reiterates each and every allegation in paragraphs 1 through 119 of the Complaint with the same force and effect as if they were fully set forth herein.

121.    Because defendant Jones actually participated in the conduct which gives rise to Ms. Zappone's claim of gender discrimination, he has acted in violation of the rights afforded Ms. Zappone under the New York Executive Law and is liable to her for his conduct, as set forth herein.

### AS AND FOR A NINTH CAUSE OF ACTION
### (Retaliation Against Kellie Zappone By the District)

122.    Plaintiff Kellie Zappone repeats and reiterates each and every allegation in paragraphs 1 through 121 of the Complaint with the same force and effect as if they were fully set forth herein.

123.    Upon information and belief, in February 2013, Ms. Zappone verbally advised District officials that she had been the victim of discriminatory conduct by Principal Jones while she was employed at the District's New Scotland Elementary School.

124.    Upon information and belief, through her Notice of Claim, Ms. Zappone notified the District in writing that she had been the victim of discriminatory conduct by Principal Jones while she was employed at the District's New Scotland Elementary School.

125.    By reason of the foregoing, Ms. Zappone has engaged in protected activity under Title VII and the New York Executive Law.

126.    Upon information and belief, prior to engaging in protected activity, Ms. Zappone had never been subject to discipline by the District in her twenty-six years of employment with the District.

127.    After engaging in protected activity, Ms. Zappone was subjected to retaliatory actions by supervisory officials of the District; that is, they subjected her to contrived criticisms of her job performance and placed her on administrative leave on or about May 14, 2013.

128.    On or about June 17, 2013, Ms. Zappone returned to work at New Scotland Elementary School without the District bringing any charges against Ms. Zappone.

129.    The foregoing is evidence that the allegations upon which the District initially made its decision to place Ms. Zappone on administrative leave were without merit and not based upon reliable evidence.

130.    Upon information and belief, the District had never previously sought discipline against an elementary school teacher for the sort of conduct upon which the District based its decision to place Ms. Zappone on administrative leave.

131.    By reason of the foregoing, and in violation of the rights afforded Ms. Zappone under Title VII and the New York Executive Law, the District retaliated against Ms. Zappone for registering complaints in opposition to the discrimination to which she was being subjected by Principal Jones while she was employed at the District's New Scotland Elementary School.

WHEREFORE, plaintiffs Deborah Cronin, Erin Reeve, Cathleen Rodriguez and Kellie Zappone each respectfully request judgment in their favor and against defendants, as follows:

a) upon each of the causes of action in this Complaint, awarding to plaintiffs compensatory damages and, to the extent they are permitted by law, awarding to plaintiffs punitive damages, each in amounts to be determined by the trier of fact;

b) awarding to plaintiffs their reasonable attorneys' fees, as provided by 42 U.S.C. § 2000e-5(k);

c) awarding to plaintiffs the costs and disbursements of this action;

d) awarding to plaintiffs interest as provided by law; and

e) awarding to plaintiffs such other and further relief as this Court deems just and proper.

Plaintiffs demand a jury trial of this action.

DATED:        January 29, 2014

ISEMAN, CUNNINGHAM, RIESTER & HYDE, LLP

_____
Brian M. Culnan
Bar Roll No. 506300
Office and P.O. Address:
9 Thurlow Terrace
Albany, New York    12203
(518) 462-3000