# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

CRONIN, et al.,

        *Plaintiffs,*

 -against-

             Civil Action No. 14-CV-00098
             (BKS/ATB)

CITY SCHOOL DISTRICT OF ALBANY, et al.,

        *Defendants.*

---

### DEFENDANT GREGORY JONES' MEMORANDUM OF LAW IN SUPPORT OF SUCCESSIVE MOTION FOR SUMMARY JUDGMENT

---

           O'CONNELL AND ARONOWITZ
           *Attorneys for Defendant,*
           *Gregory Jones*
           54 State Street
           Albany NY  12207-2501
           (518) 462-5601

MEREDITH H. SAVITT, ESQ.
 *Of Counsel*

Dated:   April 20, 2017

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 1

ARGUMENT ................................................................................................................. 9

    I. ................................................................................................................................. 9

        THE COURT SHOULD GRANT SUMMARY JUDGMENT ON THE EXECUTIVE LAW §296(1) CLAIM BECAUSE PLAINTIFFS NEVER ASSERTED A CLAIM UNDER NEW YORK STATE EXECUTIVE LAW §296(1) IN THEIR COMPLAINT AND RAISED IT FOR THE FIRST TIME ON SUMMARY JUDGMENT ....................................................... 9

    II. ............................................................................................................................... 12

        SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANT JONES BECAUSE HE IS NOT AN EMPLOYER WITHIN THE MEANING OF THE NEW YORK STATE EXECUTIVE LAW §296(1) ....................................................... 12

CONCLUSION............................................................................................................... 21

i

# TABLE OF AUTHORITIES

Page

**Federal Cases**

Bader v. Special Metals Corp.,
  985 F. Supp.2d 291 (N.D.N.Y. 2013) ............................................................... 10
Brandon v. City of New York,
  705 F. Supp. 2d 261 (S.D.N.Y. 2010) ............................................................. 10
Casseus v. Verizon N.Y., Inc.,
  722 F. Supp. 2d 326 (E.D.N.Y. 2010) ............................................................ 10
Dasrath v. Stony Brook Univ. Med. Ctr.,
  965 F. Supp. 2d 261 (E.D.N.Y. 2013) ............................................................ 19
E.E.O.C. v. Suffolk Laundry Servs, Inc.,
  48 F. Supp. 3d 497 (E.D.N.Y. 2014) .............................................................. 15
Edwards v. Jericho Union Free School District,
  904 F. Supp.2d 294 (E.D.N.Y. 2012) ................................................. 12, 14, 16
Faruki v. City of New York,
  2012 U.S. Dist LEXIS 47316 (S.D.N.Y. 2012) ............................................. 10
Feingold v. New York,
  366 F.3d 138 (2d Cir. 2004)................................................................. 12, 13, 14
Figueroa v. RSquared NY, Inc.,
  89 F. Supp.3d 484 (E.D.N.Y. 2015) .............................................................. 13
Heletsi v. Lufthansa German Airlines, Inc.,
  2001 U.S. Dist. LEXIS 22413 (E.D.N.Y. 2001)............................................ 11
Howell v. Riri, USA, Inc.,
  2013 U.S. Dist. LEXIS 27333 (E.D.N.Y. 2013)............................................ 13
Imperato v. Otsego Cnty. Sheriff's Dep't.,
  No. 3:13-CV-1594, 201 U.S. Dist. LEXIS 50155 (N.D.N.Y. 2016) ....................... 18
Lyman v. CSX Transp., Inc.,
  2010 WL 445613 (2d Cir. 2010)..................................................................... 10
Maher v. Alliance Mortg. Banking Corp.,
  650 F. Supp.2d 249 (E.D.N.Y. 2009) ............................................................ 15
Malena v. Victoria's Secret Direct, LLC,
  886 F. Supp. 2d 349 (S.D.N.Y. 2012)...................................................... 13, 14
McKinnon v. Patterson,
  568 F.2d 930 (2d Cir. 1977),
  cert. den., 434 U.S. 1087, 98 S. Ct. 1282 (1978) ............................................ 3
Muller v. First Unum Life Ins. Co.,
  23 F. Supp. 2d 231 (N.D.N.Y. 1998) ............................................................ 11
Nagel v. County of Orange,
  2013 U.S. Dist. LEXIS 44990 (S.D.N.Y. 2013) ............................................ 10

Prince v. Madison Square Garden,
    427 F. Supp.2d 372 (S.D.N.Y. 2006) ............................................................... 12

Rojas v. Roman Catholic Diocese of Rochester,
    660 F.3d 98 (2d Cir. 2011) ............................................................................... 15

Scalera v. Electrograph Sys.,
    848 F. Supp.2d 352 (E.D.N.Y. 2012) ............................................................. 15

Tomka v. Seiler Corp.,
    66 F.3d 1295 (2d Cir. 1996) ..................................................................... 13, 15

Torres v. City Univ. of New York,
    1994 U.S. Dist. LEXIS 12989*5 (S.D.N.Y. 1994) ....................................... 17

**New York State Cases**

Demay v. Wheatley Hills Gold Club, Inc.,
    41 Misc.3d 1234(A) (Sup. Ct. Nassau, 2013) ............................................... 16

Patrowich v. Chemical Bank,
    63 N.Y.2d 541, 483 N.Y.S.2d 659 (1984) ............................................. passim

**New York State Statutes**

N.Y. Executive Law §292(5) ..................................................................................... 10
N.Y. Executive Law §296(1) .............................................................................. passim
N.Y. Executive Law §296(6) ................................................................. 10, 12, 13, 15

## PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 56 and this Court's Memorandum – Decision and Order dated and filed April 11, 2017 (Dkt No. 88), defendant Gregory Jones respectfully submits this memorandum of law in support of his successive motion for summary judgment in favor of Gregory Jones on the single remaining cause of action that includes him as a party here and that is before this Court under §296(1) of the New York State Executive Law on the grounds that: 1) plaintiffs never asserted a claim for liability against Mr. Jones as an individual under §296(1); and/or 2) defendant Jones is not an employer within the meaning of the statute and, therefore, no cause of action may be asserted against him thereunder.

## FACTUAL BACKGROUND

As set forth in this Court's Memorandum-Decision and Order dated December 23, 2016 (Dkt. No. 74)("MDO") deciding defendants' original motion for summary judgment, this litigation arises from allegations of sexual harassment by defendant Jones, the former Principal of New Scotland Elementary School asserted by four teachers at the school. (MDO, p.1). The teachers have sued the City School District of Albany ("School District") and Mr. Jones. (Id.). The Court, in its MDO, granted summary judgment in favor of Mr. Jones with respect to plaintiffs' claim brought pursuant to New York State Executive Law §296(6). By this Court's Memorandum-Decision and Order dated and filed April 11, 2017, this Court invited defendant Jones to file a successive motion for summary judgment seeking dismissal of a New York State Executive Law §296(1) claim, which holds "employers" within the definition of the law as responsible for sexual harassment in the workplace.

**A. The Plaintiffs' Complaint Is Limited On Its Face To A Claim As Against Defendant Jones Under the New York State Executive Law §296(6) And Never Asserted A Cause of Action As Against Defendant Jones for Liability Under New York State Executive Law §296(1) As An Employer.**

In the Complaint, each of the four plaintiffs limited her state law cause of action as against defendant Jones to a single claim under the New York State Executive Law, which as pled, was clearly not a claim under Executive Law §296(1), but a claim under New York State Executive Law §296(6), which prohibits discrimination by any "person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." (Savitt Aff. ¶17, Exhibit O, Complaint, ¶¶106, 111, 116, 121) This was the only cause of action that each plaintiff ever asserted against defendant Jones in this action. Id. Such a conclusion is evident from the description of each plaintiff's state law discrimination claim as against Mr. Jones, which were limited to allegations that Mr. Jones "participated in the conduct that gives rise to" each individual plaintiff's claim of gender discrimination. (Exhibit O to Savitt Affidavit, Complaint ¶¶106, 111, 116, 121). Those allegations were clearly chosen to support their claim for Mr. Jones' alleged liability pursuant to §296(6) as an aider and abettor and not liability under §296(1) as an employer, which is further confirmed by a reading of many of the complaint's other allegations.

Even a cursory review of the complaint reveals that plaintiffs refer to defendant Jones as their "supervisor" no less than *six* times and never as their employer. (Statement of Material Facts ¶17, 18, 21, 23, 25, 27, Ex.O, Complaint ¶¶22, 89, 104, 109, 114, 119) Plaintiffs merely claim that defendant Jones perpetrated his alleged harassment of them by virtue of his position as a "supervisor" – and not an employer. (Statement of Material Fact ¶18, Ex. O, Complaint ¶89). In stark contrast, plaintiffs refer to the defendant School District specifically and repeatedly as an "employer" or their "employer". (Statement of Material Facts ¶¶10-11, 20 Ex. O, Complaint ¶¶9,

11, 94).[1]  Tellingly, Plaintiffs repeatedly refer to both themselves and Mr. Jones as "employees"

of the defendant School District.  (Statement of Material Facts ¶¶12-16).

Even the factual allegations underpinning their claims as against defendant Jones, all go to

the issue of trying to establish that he was a supervisor – not an employer.  The factual allegations

in plaintiffs' complaint are limited to three points, that defendant Jones:

1) Was the highest ranking person at their elementary school (Ex., O Complaint ¶19);

2) Had the ability to make recommendations as to hiring, firing and transfer of teachers
   employed at their elementary school (Ex. O, Complaint ¶20); and

3) Had the ability to direct plaintiffs' respective work schedules (Ex. O, Complaint ¶21).

Based on these three factors, plaintiffs conclude that Mr. Jones was the plaintiffs' *supervisor* (Ex

O, Complaint ¶22) – not their employer.[2]  In sum, nowhere within its 26 pages does plaintiffs'

complaint contain so much as a hint that plaintiffs have ever considered Mr. Jones to be an

"employer" within the meaning of the New York State Executive law for the purpose of this action.

B.  Mr. Jones Is Not An Employer Within The Meaning of Executive Law

Mr. Jones was employed as the principal of the New Scotland Elementary School.  (Exhibit

O, ¶17).  As Principal, he did not have the authority to hire or fire employees.  As for hiring, by

New York State Education Law §2503, hiring decisions for "city school districts" like the City

---

[1] Each plaintiff also describes defendant Jones as being liable for his alleged conduct because he "actually participated" in the conduct as alleged. (Statement of Material Facts ¶¶22, 24, 26, 28, Ex. O, Complaint ¶¶106, 111, 116, 121). As explained in defendant's second argument below, language of actual participation is relevant only to determining whether an individual is liable under Executive Law §296(6) and is not a criteria under §296(1), thereby further confirming that plaintiffs have sued defendant Jones only under the aiding and abetting provision of the New York State Executive Law §296(6), which this Court has already dismissed on defendants' prior motion for summary judgment.
[2] As will be argued below, the undisputed material facts demonstrate that Mr. Jones did not have the power to hire, fire or transfer as the law requires to establish that he is an employer and the other two factors cited by plaintiffs fall well short of what the law requires. And, as a matter of law, that an individual occupies a "high position of authority is an insufficient basis for the imposition of personal liability." McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. den., 434 U.S. 1087, 98 S. Ct. 1282 (1978).

School District of Albany, can only be made by the District's Board of Education. The Board of Education and the District Superintendent is responsible for all hiring decisions. (Statement of Material Facts ¶¶29-30, 54). Those decisions are made by the Board of Education based on the recommendation of the Superintendent. Id. Indeed, documents culled from the personnel files of the plaintiffs demonstrate that not only was the principal not involved in hiring decisions, the plaintiffs directed their own communications respecting hiring to the District's Superintendent and the Director of Human Resources and never once involved a Principal. (Statement of Material Facts ¶54).

With respect to termination, only the Board of Education can terminate a teacher's employment and that termination is controlled by the terms of a collective bargaining agreement between the School District and the teacher/plaintiffs' union and which covers the plaintiffs' employment, as well as the procedural requirements contained in New York State Education Law §3020-a, as it pertains to tenured teachers, such as all four plaintiffs. (Statement of Material Facts ¶46). Plaintiff Rodriguez testified at deposition that she did not even know if Mr. Jones had the authority to terminate her from her employment. (Savitt Aff. Ex. X, p. 34).

As a Principal, Mr. Jones also has no authority to promote employees. Under the terms of the same collective bargaining agreement, the promotion of the defendant School Districts teachers is squarely governed by the Agreement. (Statement of Material Facts ¶¶47-48, Savitt Aff. ¶47-48, Ex. H, Article 6). The District's principals, such as defendant Jones, have absolutely no authority to promote any employee. Id.

In addition, as a Principal, defendant Jones did not have independent authority to transfer any teacher or change significant responsibilities. Instead, transfer decisions were reviewed by the Superintendent of Schools and ultimately subject to a formal grievance process. The collective

bargaining Agreement sets forth the right of the District to voluntarily and involuntarily transfer Association members, like the plaintiffs, and does not grant building principals, like Mr. Jones the authority to unilaterally effectuate such transfers. (Statement of Material Facts ¶¶44-45, 49-52 and Exhibits thereto; see also transfer documents contained in plaintiffs' personnel files Exhibits I (ALB 00312); J (ALB 00537-538); and L (ALB 00602) indicating that plaintiffs were notified of transfers by the Assistant Superintendent for Human Resources and Community Relations and that both the Principal who the employee left and the Principal who was new to the employee was merely copied on the document). Any transfer recommendation made by Mr. Jones had to be reviewed and approved by the District's Head of Human Resources. (Id.). With regard to Special Education teachers, such as Ms. Reeve, Deborah Sharpe-DeFries, the District's Director of Special Education testified at deposition that building principals have "no" input regarding the transfer of special education teachers. (Statement of Material Fact, ¶45, Ex. V, p. 13).

On the flip side of the transfer issue, District Principals also lack authority to prevent employees from transferring at their own request. (Statement of Material Facts ¶55-56). And, when a teacher wanted to transfer, as plaintiff Cronin indicated in March 2015, the request was made to the Department of Human Resources, not to the building principal. (Savitt Aff., Ex. D, Ex. M, p. 75).

Building assignments are also not within the purview of the District's Principals, including Mr. Jones. According to documents produced in discovery, changes in assignments were made by either the Superintendent or the Assistant Superintendent for Human Resources and did not involve the Principal. (See, for example, Savitt Aff. Ex. K ALB 00741, Zappone assignment changes, Ex. J, ALB 059 and 0741, Reeve assignment changes). Specific to the case of Ms. Cronin, Mr. Jones had no authority over her school assignments. (Statement of Material Facts ¶2-4). Indeed, she

testified at deposition that she did not even know if Mr. Jones had anything to do with the fact that one art teacher was going to two or three buildings a week. (Ex. N, p. 61). Instead, the undisputed material facts demonstrate that her assignments were made and changed by Kate Wright, the Chairperson of the Art Department. (Statement of Material Facts ¶2-4). One assignment change was the result of the Special Ed Department informing yet another principal – Kenneth Lein – at the Montessori Magnet School that its special ed. classroom for which plaintiff Cronin was the art teacher at that school was being "collapsed" or removed.[3] (Savitt Aff., Ex. A). Mr. Lein, as principal, was given this directive by "special ed." Id. Mr. Jones also was not involved. (Savitt Aff., Ex. C, p. 225). Ms. Wright, Chairperson of the Art Department was the person who advised plaintiff Cronin of the change and was responsible for finding a new assignment to fill plaintiff Cronin's time that had been removed as a result of a decision made by special ed., not the principal to collapse a classroom. (Savitt Aff. Ex. A, B). During her deposition, plaintiff Cronin conceded that Ms. Wright's role in making assignments was to tell the principals "these are the people that I work with and that I have and what do you need and what do you have the following year" and she would then give the principals "ideas about what could be done" and "probably" what could not be done. (Ex. N, p. 107). Ms. Cronin also testified that Ms. Wright's predecessor, Gloria Savino, and to whom she had previously reported, was responsible for handling scheduling issues, concerns about resource materials and for moving the art teachers around and among the school buildings for assignments. (Ex. N, pp. 54, 56-58).[4] At her deposition, Ms. Savino confirmed that

---

[3] At deposition, plaintiff Cronin testified that she reported to multiple principals at once. (Statement of Material Facts, ¶¶39, 57, Ex. N, p. 67, 98, 105-106). She also admitted that in addition to principals, she reported to Kate Wright. (Statement of Material Facts, ¶57, Ex. N, pp. 105-107).
[4] Plaintiff Cronin admitted that she did not know if Mr. Jones had anything to do with the fact that one art teacher was going to two or three buildings a week. (Ex. N, p. 61).

she was the person responsible for matching art teachers to a building and that enrollment levels determined the number of classes that needed to be covered at each building. (Ex. S, pp. 50-52).

Furthermore, when plaintiff Cronin was at the New Scotland Elementary School, Mr. Jones did not even have the authority to require that she teach pre-kindergarten classes even though he thought it was important for pre-kindergartners to have art in their curriculum. (Statement of Material Facts ¶¶5-7, and Exs. E, N, pp. 111-112, 120-123). When Mr. Jones tried to have Ms. Cronin teach art to pre-kindergartners, she complained to Kate Wright, the Art Department chairperson, who intervened by involving Linda Rudnick, the Assistant Superintendent for Elementary Education, who directed Mr. Jones that he was prohibited from requiring Ms. Cronin to teach art to the pre-kindergartners. (Statement of Material Facts ¶¶5-7 and Exs. E, N, pp. 111-112, 120-123). By her own admission at deposition, plaintiff Cronin did not teach art to pre-kindergartners after that. (Ex. N, p. 112, 121).[5]

As for the terms and conditions of plaintiffs' employment, plaintiffs were members of the Teachers' Association and, therefore, subject to the terms of the Agreement respecting the terms and conditions of their employment. (Statement of Material Facts ¶53, Savitt Aff., ¶10, Ex. H, Article 6; Exhibit I (page ALB 00316) Assistant Superintendent for Human Resources and Community Relations advising plaintiff Cronin that she will be paid an additional $3,000 per year pursuant to the collective bargaining agreement upon becoming a National Board Certified Teacher; Exhibit J (pages ALB 00539, ALB 00541, ALB 0573) communications from Assistant to the Superintendent for Human Resources to plaintiff Reeve all respecting her request for a salary adjustment; Exhibit K (pages ALB 00780, 00781), contract salary explanation to plaintiff Zappone

---

[5] Initially, plaintiff Cronin testified that "I'm sure he could" tell the district administration whether pre-K classes could be moved into a building and then modified her testimony to say "I think he did" and then when asked whether there are any facts on which she based that assertion, she replied, "I don't know." (Savitt Aff., Ex. N, pp. 77-78)

and statement of academic credit to be applied for salary credit; Exhibit K (pages ALB 00807, 00808) consisting of emails between plaintiff Zappone and Director of Human Resources Kathleen Culligan regarding issue about step increase under the contract and longevity pay; Exhibit L (pages ALB 00643, 00648) contract salary document for plaintiff Rodriguez, statement of academic credit). Mr. Jones had no ability to circumvent those contractual mandates or the mandates under the New York State Education Law. (Savitt Aff. ¶10, Ex. H; and see Savitt Aff. Ex. G, email communication between union representatives respecting stating that Mr. Jones cannot assign or plan anything during the teachers contractual 180 minutes of prep time and that "We made it clear that we would tell our members [teachers] that they did not have to attend any meetings he asked for."). As plaintiff Rodriguez testified at deposition, she only reported to the building principals, including defendant Jones, for the purpose of their doing her job performance evaluation and if she "needed some assistance with a student". (Savitt Aff. Ex. X, p. 32-34)

Indeed, as made clear from documents obtained from the plaintiffs' personnel files, even decisions as mundane as to whether to grant bereavement leave (Savitt Aff. ¶8, Exhibit F), whether a plaintiff could attend a conference (Exhibit K ALB 0088-889), approval for pay and time off while serving jury duty (Exhibit L ALB 00672, 673) were directed by plaintiffs to and determined by Human Resources and the Office of the Superintendent and did not involve the Principal.

Based on the undisputed material facts present here, defendant Jones does not fall within the definition of employer under §296(1).[6]

---

[6] Even its Memorandum-Decision denying summary judgment on the legal issue now before the Court, the Court agreed that the plaintiffs failed to support their assertion that Mr. Jones was running their elementary school. (MDO, p. 28).

8

# ARGUMENT

## I.

## THE COURT SHOULD GRANT SUMMARY JUDGMENT ON THE EXECUTIVE LAW §296(1) CLAIM BECAUSE PLAINTIFFS NEVER ASSERTED A CLAIM UNDER NEW YORK STATE EXECUTIVE LAW §296(1) IN THEIR COMPLAINT AND RAISED IT FOR THE FIRST TIME ON SUMMARY JUDGMENT[7]

As set forth above, plaintiffs never pled a cause of action under New York State Executive Law §296(1). Indeed, plaintiffs never even alleged that defendant Jones was an employer under the law and, instead, limited their allegation concerning his status only to "supervisor." (Complaint ¶22 and *supra pp. 2-3)*. Over and over again in their complaint, the plaintiffs clearly indicate that defendant Jones is not being sued as an employer. (Material Statement of Facts ¶¶10-28).

First, plaintiffs distinguished between the defendant School District as an employer, which it clearly identified as an employer (Statement of Material Facts ¶¶10-11, 20 Ex. O, Complaint ¶¶9, 11, 94) and defendant Jones who plaintiffs alleged no less than *six* times to be merely their supervisor. (Statement of Material Facts ¶17, 18, 21, 23, 25, 27, Ex. O, Complaint ¶¶22, 89, 104, 109, 114, 119). Indeed, plaintiffs even specifically alleged that defendant Jones perpetrated his alleged harassment of them by virtue of his position as a "supervisor" – and not an employer. (Statement of Material Fact ¶18, Ex. O, Complaint ¶89). Moreover, plaintiffs equivalently described themselves and defendant Jones as "employees" and that both they and Mr. Jones were "employees" of the defendant School District. (Statement of Material Facts ¶¶12-16).[8]

---

[7] For the purpose of this motion, defendant assumes the Court's familiarity with the applicable standard of summary judgment as it was set forth in the Court's prior MDO pp. 14-15) and that standard is incorporated by reference and need not be repeated herein.

[8] Each plaintiff also describes defendant Jones as being liable for his alleged conduct because he "actually participated" in the conduct as alleged. (Statement of Material Facts ¶¶22, 24, 26, 28, Ex. O, Complaint ¶¶106, 111, 116, 121). As explained in defendant's second argument below, language of actual participation is relevant only to determining whether an individual is liable under Executive Law §296(6) and is not a criteria under §296(1), thereby further

9

In stark contrast, the plaintiffs allege that the School District is an "employer" within the meaning of Executive Law §292(5). (Ex. O, Complaint ¶11). That allegation by itself demonstrates that plaintiffs never claimed Mr. Jones was an "employer" here within the meaning of the Executive Law. Clearly, when plaintiffs meant to plead for liability of a party as an "employer" under the Executive Law, they knew how to do it, but chose not to do so and did not do so as to Mr. Jones.

That plaintiffs did not specifically plead a cause of action arising out of §296(1) is clear from plaintiffs' argument in opposition to defendant Jones' motion for reconsideration. (Compare Dkt. No. 76-1, pp. 6-7, *with* Dkt. No. 82, pp. 7-10). Tellingly, when confronted about their failure to plead a cause of action arising out of §296(1), plaintiffs were unable to point to a single paragraph of the complaint that mentions §296(1) or that alleges Jones was their employer. Instead, plaintiffs claim that they "clearly asserted individual liability claims against defendant Jones under New York Law from the outset of this action", because they asserted that he "actually participated" in the discrimination at issue under Feingold v. State of New York, 366 F.3d 138 (2d Cir. 2004). (Dkt. No. 84, p. 7). As explained below, however, Jones' actual participation in the alleged sexual harassment is relevant only to his liability as an aider and abettor under §296(6).

Indeed, it is undisputed that the first time §296(1) was ever even referred to by plaintiffs was in two paragraphs contained in plaintiffs' 50 page memoranda of law in opposition to the defendants' motion for summary judgment. (Dkt. No. 67-3). Yet the cases are legion that a party "may not raise new claims or theories of liability for the first time in opposition to summary judgment." Bader v. Special Metals Corp., 985 F. Supp.2d 291, 319 (N.D.N.Y. 2013); Nagel v.

---

confirming that plaintiffs have sued defendant Jones only under the aiding and abetting provision of the New York State Executive Law §296(6), which this Court has already dismissed on defendants' prior motion for summary judgment.

County of Orange, 2013 U.S. Dist. LEXIS 44990 at *15 (S.D.N.Y. 2013); Casseus v. Verizon N.Y., Inc., 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010); Faruki v. City of New York, 2012 U.S. Dist LEXIS 47316 at *23 (S.D.N.Y. 2012).

In Lyman v. CSX Transp., Inc., 2010 WL 445613 (2d Cir. 2010), the Second Circuit affirmed the district court's determination that it should not consider claims raised for the first time in opposition to summary judgment, finding that an opposition to a summary judgment motion is not the place for a plaintiff to raise new claims. Thus, it is "black letter law" that a party may not raise new claims for the first time in opposition to summary judgment. Brandon v. City of New York, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010).[9] Given that plaintiffs never asserted a claim under §296(1), defendants are entitled to summary judgment as to plaintiffs' new and untimely claim under this section.

To hold otherwise, would prejudice defendant's ability to defend against this claim. Heletsi v. Lufthansa German Airlines, Inc., 2001 U.S. Dist. LEXIS 22413 at *n.1 (E.D.N.Y. 2001) (defendant would be severely prejudiced if plaintiff was permitted to change his theory of liability at this part of the litigation). Here, liability as an aider and abettor – upon which the entirety of the plaintiffs' case against Mr. Jones was based -- is very different from liability under 296(1) and does not require independent discovery. A claim for liability under §296(1) raises very different factual issues and would require independent discovery by both party defendants. For all of these

---

[9] Plaintiffs also cannot birth an unasserted claim under §296(1) by amendment without violating the requirements of Fed. R. Civ. P. 15. See, Heletsi v. Lufthansa German Airlines, Inc., 2001 U.S. Dist. LEXIS 22413 at *n.1 (E.D.N.Y. 2001) ("A party cannot amend their complaint simply by alleging new facts and theories in their memoranda opposing summary judgment"). Any effort by plaintiffs to have the court construe their brief in opposition to summary judgment as implicitly seeking leave to amend its Complaint should be denied as prejudicial coming at this late date and as futile as the Court has already noted that that there is no basis for concluding that Mr. Jones was their employer as defined by Executive Law §296(1). See, e.g., Muller v. First Unum Life Ins. Co., 23 F. Supp. 2d 231, 236 (N.D.N.Y. 1998) (in case where plaintiff tried to sue insurer and failed to alleged insurer was his employer within the meaning of the statute, amendment to add them as defendants to discrimination claim not permitted).

11

reasons, summary judgment should be granted in defendant Jones's favor on a claim made under

§296(1) of the New York State Executive law.

## II.
### SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANT JONES BECAUSE HE IS NOT AN EMPLOYER WITHIN THE MEANING OF THE NEW YORK STATE EXECUTIVE LAW §296(1)

As set forth above, the undisputed material facts demonstrate that Mr. Jones is not an

employer within the meaning of the New York State Executive Law §296(1) and summary

judgment should be granted in his favor.

A. The Standard To Be Applied To Determine Whether Mr. Jones Is An Employer Within The Meaning of The Executive Law §296(1) Is Whether Mr. Jones Had Hiring Or Firing Authority

New York State Executive Law provides two distinct ways to hold an individual liable for

discrimination: 1) as an employer under §296(1); or 2) as an aider and abettor to discriminatory

practices (§296(6)). Prince v. Madison Square Garden, 427 F. Supp.2d 372, 384 (S.D.N.Y.

2006)(there are two bases for holding an individual liable under the NYSHRL – an as an employer

under Section 296(1) OR [emphasis supplied] as an aider or abettor under Section 296(6)).

Executive Law §296(1) bars an "employer" from discriminating in employment on the

basis of certain protected categories, including sex. The case law is well established that for an

individual to be deemed an employer under Executive Law §296(1), the individual must either

have had: 1) an ownership interest; or 2) the authority to hire and fire employees and do more than

carry out personnel decisions made by others. Edwards v. Jericho Union Free School District, 904

F. Supp.2d 294 (E.D.N.Y. 2012). Here, it is uncontested and axiomatic that Mr. Jones does not

and lawfully could not have any ownership interest in a public school district. As for hiring and

firing, etc., as set forth above, the undisputed facts demonstrate that Mr. Jones did not have hiring

12

or firing authority or any authority to do more than carry out personnel decisions made by others. Therefore, he may not be held liable as an individual under Executive Law §296(1).

Notwithstanding that the definition of who is an employer under §296(1) is well established law as set forth above, plaintiffs may argue, based on <u>Feingold v. New York</u>, 366 F.3d 138 (2d Cir. 2004), that in order to hold an individual liable under §296(1), all plaintiffs have to show is that the accused individual "actually participated" in the conduct underlying the discrimination claim. While that may be the conclusion reached in that case, for its part, the Court in <u>Feingold</u> in coming to this conclusion was wrong because it relied exclusively on an erroneous reading of <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295 (2d Cir. 1996). Reading <u>Tomka,</u> it is clear that the <u>Tomka</u> court drew a significant distinction between claims brought under §296(1) versus §296(6), stating that an individual is not subject to suit as an employer "if he is not shown to have any ownership interest or the power to hire or fire. <u>Id</u>. at 1317, citing <u>Patrowich v. Chemical Bank</u>, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659 (1984)(holding that an individual is not liable under 296(1) as an employer unless he is shown to have any ownership interest or any power to do more than carry out personnel decisions made by others). The <u>Tomka</u> court went on to separately opine that under §296(6) – the aider and abettor provision– an individual who "actually participates" in the conduct can be held liable. <u>Id</u>. Thus, under <u>Tomka</u>, it is only as to the aider and abettor claims (which were previously dismissed by this Court) that the standard "actually participated" applies.[10] <u>Id</u>. Tomka never recognized that "actual participation" could establish grounds for liability under §296(1). As court decisions subsequent to <u>Feingold</u> confirm, both plaintiffs and the court in <u>Feingold</u>, misread the court's decision in <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295 (2d Cir. 1996).

---

[10] Given that the 'actually participates" language only applies to claims brought under Executive Law §296(6), plaintiffs cannot rely on this language in their complaint to support a claim that they have brought a claim under §296(1).

Later court decisions invariably make the distinctions between the two separate causes of action clear and that §296(1) requires a finding of hiring and firing authority versus the §296(6) aider and abettor claim that only requires the standard that the individual accused "actually participated" in the conduct.[11]

For example, just last month, in *Shands v. Lakeland C. Sch. Dist.*, the Southern District of New York explained that:

> [T]he NYSHRL provides for "individual liability in some circumstances." *Anyanwu v. City of New York*, No. 10-CV-8498, 2013 WL 5193990, at *22 (S.D.N.Y. Sept. 16, 2013). "A supervisor may be subject to personal liability under § 296(1) of the NYSHRL where such individual has been deemed an 'employer' for purposes of the NYSHRL." *Maher v. All. Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 260 (E.D.N.Y. 2009); *see also* N.Y. Exec. Law § 296(1). A supervisor may be considered an "employer" where it is shown that he has "an ownership interest or any power to do more than carry out personnel decisions made by others," such as the power to hire and fire employees. *Pellegrini v. Sovereign Hotels, Inc.*, 740 F. Supp. 2d 344, 355 (N.D.N.Y. 2010) (internal quotation marks omitted).
> Likewise, under § 296(6) of the NYSHRL, an individual defendant may be held personally liable where he aids and abets discrimination. *See* N.Y. Exec. Law § 296(6) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel[,] or coerce the doing of any of the acts forbidden under this article, or attempt to do so."); *see also Maher*, 650 F. Supp. 2d at 260 ("An individual defendant may be personally liable for discrimination under the aid-or-abet provision of the NYSHRL."). The Second Circuit has interpreted the language of § 296(6) "to mean that a defendant who actually participates in the conduct giving rise to a discrimination claim may be personally liable as an aider and abettor."

---

[11] So clear and well established is this distinction that in cases decided after <u>Feingold</u>, courts have actually cited even <u>Feingold</u> when applying this distinction, simply assuming that the two sections of the law are decided under two separate standards. In <u>Howell v. Riri, USA, Inc.</u>, 2013 U.S. Dist. LEXIS 27333 *46-49 (E.D.N.Y. 2013), the court first addressed section 296(1) and stated that that section provides "for individual liability where a defendant has an ownership interest or if the defendant has the authority to hire and fire employees." Only then can an individual be held liable under §296(1). The court then goes on to state that the Executive law also provides for individual liability under section 296(6) where a person aids, abets, incites, compels or coerces the doing of any of the acts forbidden under this article or attempts to do so. Analyzing §296(6) and citing <u>Feingold</u>, the Court in <u>Howell</u>, stated that under Section 296(6) supervisors and co-workers who "actually participated" in the conduct giving rise to the discrimination can be liable even if they do not have the ability to hire and fire employees. Analyzing section §296(6) separately from its analysis under 296(1), the court asked whether there was enough evidence to create an issue of fact under *§296(6)* and only that section that the accused individual actually participated in the conduct. See also, <u>Figueroa v. RSquared NY, Inc.</u>, 89 F. Supp.3d 484, 493(E.D.N.Y. 2015)(citing <u>Feingold</u>, a co-worker who lacks the authority to either hire or fire the plaintiff under 296(1) may still be held liable as an aider-abettor under §296(6) if he actually participates in the conduct giving rise to a discrimination claim

14

*Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1160 (E.D.N.Y. 2003)
(internal quotation marks omitted).
*Shands v. Lakeland C. Sch. Dist.*,, 2017 WL 1194699, at *8 (S.D.N.Y. Mar. 30, 2017),

Likewise, in <u>Malena v. Victoria's Secret Direct, LLC</u>, 886 F. Supp. 2d 349, 366 (S.D.N.Y.

2012), the Court stated:

> The NYSHRL's §296(6) states that "[i]t shall be an unlawful
> discriminatory practice for any person to aid, abet, incite, compel or
> coerce the doing of any of the acts forbidden under this article
> [including discrimination and retaliation], or to attempt to do so."
> N.Y. Executive Law §296(6). To be liable under §296(6), an
> individual employee need not have supervisory or hiring and firing
> power, but must have "actually participated in the conduct giving
> rise to the claim."

The Court in <u>Malena</u> also said that "[i]ndividual liability may lie under §296(1) but is "limited to

individuals with ownership interest or supervisors, who themselves, have the authority to hire and

fire employees. <u>Id</u>. at 199 (citations omitted).

Indeed, since the Court decided <u>Feingold</u>, innumerable courts have upheld the distinction

between liability under §296(1), which requires hiring and firing authority versus liability under

§296(6), which only requires the lesser standard of "actual participation" in the challenged conduct

and have time and time again cited to <u>Patrowich v. Chemical Bank</u>, 63 N.Y.2d 541, 543-44, 483

N.Y.S.2d 669 (1984), a case from New York State's highest court, which could not have drawn

these lines more clearly, to do so. In <u>Edwards v. Jericho Union Free School District</u>, 904 F.

Supp.2d 294 (E.D.N.Y. 2012), a case like this one, involving the issue of whether a public school

principal could be held individually liable for discrimination under the New York Executive Law

§296(1) as an employer, the Court applied the separate analysis to the plaintiff's claims of

discrimination under the Executive Law. The Court rejected the plaintiff's claim against the

principal under Executive Law §296(1) because the Principal was not an employer within the

meaning of the law. (904 F. Supp.2d at 304). The plaintiff's allegations were insufficient to meet

the applicable standard that the school principal had the power or authority to hire or fire plaintiff or that he had the ability to do anything more than carry out personnel decisions made by the Board of Education and/or the District., citing Patrowich, 63 N.Y.2d at 542 (an individual is not liable under the NYHRL §296(1) unless he is shown to have ownership interest or any power to do more than carry out personnel decisions made by others). (Id.). The Court went on to articulate the separate standard to be applied to a claim under Executive law §296(6) as showing that the principal "actually participates in the conduct giving rise to a discrimination claim", citing Tomka, 66 F.3d at 1317. (Id.).

In Scalera v. Electrograph Sys., 848 F. Supp.2d 352, 371 (E.D.N.Y. 2012), a Court again carefully set out the two different analyses to be applied to these two separate provisions of the Executive Law. First, looking at §296(1), the court stated that an individual may be found liable under Section 296(1) if the individual has any ownership interest in the employer or has the power to do more than carry out personnel decisions made by others. (Id.). The Court next separately turned to whether an individual can be held liable under §296(6), the aider and abettor provision, and stated that an individual can be held liable under this section when he or she "actually participates in the conduct giving rise to a discrimination claim", citing Tomka v. Seiler. (Id.). The court went so far as to note that the defendant's assertions that a particular employer was not personally involved in the discrimination, while capable of supporting a finding that he was not "individually liable under section 296(6), which requires actual participation in the conduct giving rise to the alleged discrimination" were "irrelevant under Section 296(1), which is a 'direct liability' provision". Id. at p. 374.

In case after case, the Courts apply this same distinction between the two provisions of the New York State Executive Law and apply two completely discrete standards as described for

determining an individual's liability.  See also, Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107, n.10 (2d Cir. 2011) (an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participate in the conduct giving rise to a discrimination claim); E.E.O.C. v. Suffolk Laundry Servs., Inc., 48 F. Supp. 3d 497, 523 (E.D.N.Y. 2014) (distinguishing the two separate grounds for individual liability under the Human Rights law and setting for the separate standards of liability under each section); Maher v. Alliance Mortg. Banking Corp., 650 F. Supp.2d 249, 260-61 (E.D.N.Y. 2009)(personal liability under §296(1) requires that the individual have an ownership in the business employing the plaintiff or the power to do more than carry out personnel decisions made by others, citing Patrowich versus under §296(6) where the defendant actually participated in the conduct); Demay v. Wheatley Hills Gold Club, Inc., 41 Misc.3d 1234(A)*22 (Sup. Ct. Nassau, 2013)(an individual may be sued under Executive Law §296(1) but only if the individual is shown to have an ownership interest or the power to do more than carry out personnel decisions made by others, citing Patrowich, and Executive Law §296(6) requires that the individual actually participate in the conduct giving rise to the discrimination claim).

Drawing this distinction is the only one that makes sense given the two statutory provisions. Indeed, if the plaintiffs' position had any merit, the aider and abettor section would be superfluous and wholly unnecessary, but it was very specifically included by the State Legislature in the statute. Therefore, the proper standard to be applied here to determine whether Mr. Jones is an employer within the meaning of §296(1) is whether Mr. Jones had hiring and firing authority and not whether he actually participated in the conduct allegedly giving rise to plaintiffs' claims.

      B. The Undisputed Material Facts Demonstrate That Mr. Jones Did Not Exercise Hiring Or Firing Authority Or Have The Authority To Do Anything More Than Carry Out Personnel Decisions Made By Others

Assuming that the proper standard to be applied under §296(1), is whether Mr. Jones had hiring and firing authority so as to include him in the definition of employer within the meaning of that law, the answer, based on the undisputed factual evidence must be no. As set forth in the fact section above and the supporting documentary evidence, Mr. Jones, as a District Principal, did not exercise such authority or do more than carry out the personnel decisions made by others. He does not have the authority to hire, terminate, promote, transfer or demote employees. (*Supra pp. 3-7).* Such authority was exercised by the Board of Education, the District Superintendent, the Director of Human Resources and further constrained by the requirements of the applicable collective bargaining agreement and plaintiffs have never presented any evidence to the contrary. (*Supra, pp.*3-8*).* This is the exact scenario under which the Court in <u>Edwards</u> rejected the plaintiff's claim against a public school principal under Executive Law §296(1) because the principal was not an "employer" within the meaning of the statute. (904 F. Supp.2d at 304). In that case, the Court found, like here, that the Principal did not have the power or authority to hire or fire plaintiff, or the ability to "do anything more than carry out the personnel decisions made by the Board and/or District." Id. at 304. Therefore, the plaintiff failed to meet his burden of demonstrating that the Principal should be deemed an "employer" within the meaning of Executive Law §296.

In this case, plaintiffs can offer no factual justification to support finding Mr. Jones to be an "employer" under the standard that plaintiffs must meet under their burden of proof to establish liability of an individual under §296(1). <u>Torres v. City Univ. of New York</u>, 1994 U.S. Dist. LEXIS 12989*5 (S.D.N.Y. 1994) (plaintiff always shoulders the ultimate burden of proof in discrimination claims) *see also,* <u>Patrowich v. Chemical Bank</u>, 63 N.Y.2d 541, 542, 483 N.Y.S.2d (1984) (a corporate employee, even if a manager or supervisor of a corporate division is not individually subject to a suit for discrimination under the New York Human Rights Law *if he is*

*not shown [emphasis supplied]* to have any ownership interest or power to do more than carry out personnel decisions made by others)).  Therefore, summary judgment should be granted in defendant Jones' favor.

At most, as this Court already noted in its prior decision on summary judgment, the evidence adduced by plaintiffs showed that Mr. Jones had the authority to *recommend* transfers and firings. (MDO, p. 28).  As the undisputed evidence submitted on this motion shows, Mr. Jones had no independent authority to transfer teachers.  Transfer decisions were subject to review by the District's Director of Human Resources and Superintendent, as well as being subject to a formal grievance process that had been negotiated by the plaintiffs' collective bargaining representatives.  (Statement of Material Facts ¶¶44-45, 49-50 and Exhibits thereto, and Exhibits H, I, J, L)  With respect to Special Education teachers, such as Ms. Reeve, the building principal had "no" authority to transfer them.  (Statement of Material Facts ¶45, Ex. V thereto).

The Court has also found that plaintiffs failed to support with their cited evidence that Mr. Jones had the ability to direct their work schedules (MDO, p. 28, f/n18), a conclusion that is amply supported by the evidence submitted on this motion.  (See *supra* pp. 5-7).  Mr. Jones was not responsible for teacher building assignments and could not even determine that pre-kindergartners have art in their program. (See *supra* pp. 5-7).  He had no authority to make decisions regarding the plaintiffs' salary, working hours, or benefits and, according to at least one plaintiff, his supervision was limited to evaluating her job performance and getting assistance relating to a student. (Exhibit G, H, Ex, pp. 32-34).  Even if Mr. Jones had "certain day to day authority, such as conducting teacher reviews", this Court has already dismissed the significance of those factors to this analysis by finding that as a matter of law such facts would be insufficient "to impute

liability to Mr. Jones under §296(1)."[12] (MDO, p. 28).  The Court also determined that, as a matter

of law, the fact that a person has "supervisory control over the employees and could review and

comment on their performance does not subject that person to liability under §296(1) (citations

omitted)."  Id.  According to this Court's own prior decision, well established case law, and the

evidence submitted on this motion to dismiss, plaintiffs cannot show that Mr. Jones has sufficient

authority with regard to hiring and firing  or could do more than carry out personnel decisions

made by others sufficient to confer employer status upon him within the meaning of §296(1).

To find otherwise here would be inconsistent with the very purpose of the Executive Law

§296(1), which, was succinctly set forth by this Court in its prior Memorandum-Decision and

Order, when it cited Dasrath v. Stony Brook Univ. Med. Ctr., 965 F. Supp. 2d 261, 272 (E.D.N.Y.

2013), stating:

> Allowing the section 296(1) claim to proceed against [the
> supervisors] upon the basis of the allegation that they 'played a role'
> in plaintiff's termination by supervising and evaluating him would
> disregard the decision of the New York State Legislature to apply
> section 296(1) only to employer[s] and not to all supervisors.

Id.

(MDO, p. 29).

Nowhere in the Complaint do plaintiffs allege that defendant Jones was their employer – either as

a factual or legal matter.  The undisputed material facts do not support such a finding.

---

[12] The Court, in a footnote, also recognized that the Plaintiffs neither alleged nor submitted evidence that Mr. Jones determined the method or rate of teacher pay or that he maintained employment records, which were some of the most significant factors relied upon by the Court in Imperato v. Otsego Cnty. Sheriff's Dep't., No. 3:13-CV-1594, 201 U.S. Dist. LEXIS 50155, at *84-85 (N.D.N.Y. 2016), the case upon which plaintiffs principally relied for their argument in their initial summary judgment memorandum of law.  As made clear by the documentary evidence submitted with this instant motion for summary judgment, Mr. Jones had absolutely no control over plaintiff's methods or rate of pay or any of the myriad terms and conditions of employment which were exclusively controlled by the collective bargaining agreement applicable to the teachers and its reach is demonstrated by many of the documents contained in each plaintiff's personnel files.  (Statement of Material Facts ¶54 and Exhibits E, H, J, K, L, G).  The documents contained in the plaintiff's personnel records from the central office also show that Mr. Jones did not have a significant role with regard to record keeping.  (Exhibits I, J, K, L).

## CONCLUSION

Based on the foregoing, defendant Jones respectfully requests that this Court grant his motion for summary judgment dismissing any claim against him under the New York State Executive Law §296(1) and dismissing him as a party to this action.

DATED:     April 20, 2017                    Respectfully submitted,

                                             Meredith H. Savitt (Bar No.601191)
                                             O'CONNELL AND ARONOWITZ, P.C.
                                             *Attorneys for Defendant Gregory Jones*
                                             54 State Street, 9th Fl.
                                             Albany, New York 12207
                                             Telephone:  (518) 462-5601
                                             Email: msavitt@oalaw.com